**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

TRACI SHAW
c/o David A. Goldstein Co., L.P.A.                  :          CASE NO.:
511 S. High Street, Suite 200                       :
Columbus, Ohio 43215                                :          JUDGE
                                                    :
            Plaintiff,                              :          MAGISTRATE JUDGE
                                                    :
v.                                                  :          **JURY DEMAND ENDORSED**
                                                    :          **HEREIN**
RICHARD WOZNIAK                                     :
(Individually and in his                            :
official capacity as a Deputy                       :
Director with the Columbus Department of            :
Public Safety)                                      :
77 N. Front Street                                  :
Columbus, Ohio 43215                                :
                                                    :
And                                                 :
                                                    :
CITY OF COLUMBUS                                    :
c/o Zach Klein                                      :
Columbus City Attorney                              :
77 North Front Street                               :
Columbus, Ohio 43215                                :
                                                    :
            Defendants.                             :

**COMPLAINT**

Plaintiff Traci Shaw, by and through her counsel, David A. Goldstein Co., L.P.A., and

Collins and Stephens Co., L.P.A. for her Complaint against Defendant Richard Wozniak does

hereby state, allege, and aver the following:

**I.  JURISDICTION AND VENUE**

1.      Jurisdiction over claims brought under the Civil Rights Act of 1871, 42 U.S.C. §

1983, is conferred on this Court by 28 U.S. C. § 1331 (federal question), § 1343 (civil rights),

and jurisdiction over the state claims is conferred by 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     Compensatory and punitive damages are sought pursuant to the common law of the State of Ohio and 28 U.S.C. § 2201 and § 2202.

3.     Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 1988, the common law of the State of Ohio and Fed. R. Civ. P. 54.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b), because the events giving rise to this action occurred in Franklin County, Ohio, where Defendant served as a Deputy Director with the Department of Public Safety for the City of Columbus.

## II. PARTIES

5.     Plaintiff Traci Shaw is an individual, employed by the City of Columbus as a Columbus Police Officer and, at all times relevant hereto, a resident of Franklin County, Ohio.

6.     Defendant Richard Wozniak is being sued in his individual capacity and was, at all relevant times hereto, was a Deputy Director with the Department of Public Safety for the City of Columbus and was assigned to investigate police misconduct.  Upon information and belief, Defendant was a "person" under 42 U.S.C. § 1983 acting under color of law.

7.     Defendant, City of Columbus, is a local government entity organized and operating under the laws of the State of Ohio.

## III. FACTS

8.     The facts upon which this Complaint is based and the claims of Traci Shaw (referred to herein as "Plaintiff") against Defendants Richard Wozniak (referred to herein as "Wozniak") and Defendant City of Columbus are founded, in part, upon the abuse of process, malicious prosecution, and civil conspiracy against Plaintiff in violation of her civil rights.

9.      This is a Civil Action for compensatory and punitive monetary damages for Defendants' violations of Plaintiff's rights secured under 42 U.S.C. §§ 1983 and 1988, the Fourth, and Fourteenth Amendments to, and other provisions of the United States Constitution and comparable provision of the Ohio Constitution, as well as rights secured under the laws of Ohio.

10.      Plaintiff has been a Columbus Police officer for 23 years  At all relevant times hereto her duties with the City of Columbus Division of Police (CPD), Plaintiff was assigned to the Training Bureau and her job duties include training sworn CPD personnel in the Division's policies, procedures, tactics, and techniques in relation to the Division's Use-of-Force Continuum. This training involves annual certification and recertification in intermediate weapons, prisoner control tactics and techniques, pain compliance, handcuffing; and a review of policies, procedures, case law associated with the use of force.

11.      Plaintiff has been retained by the Columbus City Attorney's Office as a "Use-of-Force" expert in matters whereby the City of Columbus and its' officers have been named in civil lawsuits alleging use of "excessive force."

12.      Plaintiff is a certified subject matter expert in Subject Control through the Ohio Peace Officer Training Commission (OPOTC). Plaintiff is certified to provide instruction to officers throughout the State of Ohio on all of the concepts, issues, and procedures for threat assessment, approaching, controlling, and restraining resisting subjects.

13.      On May 25, 2020, Officer Derek Chauvin of the Minneapolis Police Department murdered George Floyd.

14.      Between May 28, 2020, through July 19, 2020, in Columbus, Ohio, individuals took to the streets of the City of Columbus to demonstrate against the murder of George Floyd.

15. The rioters assaulted police officers with several types of projectiles to include, but not limited to, rocks, frozen water bottles, and pieces of concrete. In addition, fireworks were shot at officers. Rioters shattered windows at local businesses, set fires to and burglarized/looted businesses and landmarks, such as the Ohio Theater

16. On May 30, 2020, Governor Mike DeWine activated the National Guard, CPD requested Mutual Aid, and Columbus Mayor Andrew Ginther declared a state of emergency and instituted a 10:00 p.m. curfew. A state of emergency notification was distributed to the public declaring an emergency in the downtown area and instructed citizens to avoid the area.

17. Rioters used "supply" and/or "agitator" vehicles to facilitate their goal of afflicting harm on police officers, citizens and maximizing destruction within the City of Columbus. Some of these vehicles were found to contain firearms, ammunition, sledgehammers, projectiles, and other dangerous items.

18. As a result of the conduct of rioters, the CPD issued the several orders to the public and its own officers.

19. Rioters used "supply" and/or "agitator" vehicles to facilitate their goal of afflicting harm on police officers, citizens and maximizing destruction within the City of Columbus. These vehicles contained firearms, ammunition, sledgehammers, projectiles and other dangerous items.

20. As a result of the conduct of the rioters, more than 200 Columbus Police officers sustained injuries.

21. On May 29, 2020, Plaintiff's field force members were advised by CPD supervisors that the Division would not tolerate crimes of property destruction, crimes of violence and roadways being taken over by rioters.

4

22.     On May 30, 2020, Plaintiff was assigned to a "mobile arrest team". The purpose of the "mobile arrest team" was to arrest individuals who were resupplying rioters with dangerous ordinances used to inflict harm on police officers and the general public.

23.     Around 6:00 p.m., officers were reporting that in the downtown vicinity, including the Short North area, crowds were threatening to "kill the cops," throwing bottles and other items at the officers, taking over roadways, failing to follow any commands and assaulting officers.

24.     At all relevant times hereto, an emergency was declared in the downtown area, including the Short North instructing all citizens to disperse and avoid the area, the National Guard had been activated, and a curfew was implemented.

25.     At or around 6:30 p.m., Plaintiff, along with several other officers, were located at High and Gay Street in Columbus, Ohio, who observed rioters surrounding and threatening business owners who at that time were attempting to board up their businesses.

26.     Pursuant to orders provided by Plaintiff's superiors, Plaintiff and other officers formed  a line of cruisers in the roadway in order to keep the rioters and/or protestors on the sidewalk as well as clearing the roadways for the motoring public.

27.     During this time frame, rioters were throwing rocks, bottles and other items at Plaintiff and other police officers.

28.     As the rioters proceeded north on High Street, Plaintiff, as well as fellow officers, became surrounded by rioters.

29.     Plaintiff and fellow officers were at the intersection of Hubbard and High Street, at which time Plaintiff's supervisor instructed all officers to retreat to the area of Goodale and High Street for their own safety.

30. The goal of the Columbus Police Department at the intersection of Goodale and High Street was to inhibit rioters from forming a larger group that would result in an even more dangerous situation for the public and police.

31. Due to the fact that rioters had taken over the roadway, disregarded verbal warnings to disperse, outnumbered and overwhelmed the officers, an "officer in trouble call" was aired. Plaintiff was ordered to return to her cruiser and use the public announcement (PA) system to order rioters to "Clear the Area or You will be Maced."

32. Franklin County SWAT Team responded to the scene and implemented the Long Range Acoustic Device (LRAD) system. The LRAD was used to audibly order the rioters to clear the area by broadcasting, "This is the Franklin County Sheriff's Office…Clear the Area."

33. At all relevant times hereto, Plaintiff and other peace officers continued to be struck with fireworks, rocks and other debris.

34. Plaintiff was notified that a "supply" vehicle was parked in the roadway east of the intersection. Plaintiff was ordered by her supervisor to remain at Goodale and High St due to the limited resources and the emergency situation created by the rioters.

35. The Franklin County SWAT Team pushed the rioters north and Plaintiff was ordered to be the "rear guard," and ensure the area was cordoned off to pedestrian and vehicular traffic.

36. At all relevant times hereto, Sergeant Laura Suber of the Columbus Police Department, who was the supervisor of Plaintiff, ordered Plaintiff and other officers, that if presented with the opportunity, to initiate arrests for any offenses for failure to disperse, riot or misconduct due to the emergency declared by the City.

37.     There was a group of individuals near a business formerly known as Blackpointe who were throwing objects at Plaintiff.

38.     One of the individuals in the area set forth above approached Plaintiff. Plaintiff lifted her chemical agent (commonly known as mace) as a deterrent and instructed her to "clear the area". This individual complied with Plaintiff's orders, turned around and went back to the group of individuals.

39.     At or around the same time as above, Plaintiff was ordered by her superiors to proceed to the "supply" vehicle that was east of her.

40.     As Plaintiff entered her cruiser, the group of individuals referenced above quickly began to walk towards Plaintiff and the area which was cordoned off.

41.     Plaintiff yelled from inside her cruiser to the individuals, "You can't come this way". The individuals failed to obey Plaintiff's lawful command and continued to approach the intersection of Goodale and High.

42.     Based upon the individuals' failure to comply with Plaintiff's lawful command, as well as the orders previously provided to Plaintiff to ensure the area was cordoned off and with the awareness individuals in the same area had thrown objects at Plaintiff and other officers, the prior orders by law enforcement to "clear the area", prior orders to protect the rear guard of the Franklin County Deputies, the policy and procedures of CPD, and other reasonable justification(s), Plaintiff lawfully deployed a one to two second burst of Division issued chemical spray.

43.     After Plaintiff lawfully deployed the one to two second burst of Division issued chemical spray, the individuals complied with Plaintiff's commands and retreated behind Black Pointe.

44. None of the individuals who encountered the chemical agent required any medical attention nor suffered any injuries.

45. Plaintiff immediately proceeded to the "supply vehicle" and arrested the driver. Plaintiff and other officers recovered an assault style rifle, a revolver; and ammunition from the "supply vehicle".

46. After the riots, there were numerous citizen complaints, social media postings and media coverage regarding the conduct of peace officers, including whether the use of force was reasonable and justified.

47. On or about June 24, 2020, Mayor Andrew Ginther had announced that an independent investigator would be hired to investigate alleged police misconduct. It was later disclosed that the law firm of BakerHostetler would conduct the investigations. However, later it was disclosed BakerHostetler was investigating administrative violations by Columbus Police Officers.

48. At or around June of 2020, City of Columbus by and through Mayor Ginther and/or Columbus City Council hired and/or appointed Wozniak to investigate alleged criminal conduct by Columbus Police officers during the riots. Wozniak's position was a Deputy Directory with the Columbus Department of Public Safety.

49. At the time of his hiring and/or appointment to act as a special investigator and in his employment with City of Columbus, Department of Public Safety, Wozniak was required to uphold the United States Constitution, as well as the constitution and laws of the State of Ohio.

50. At all relevant times hereto, Wozniak acted in his official capacity and under the color of law as a special investigator and/or Deputy Director for the City of Columbus Department of Public Safety.

51.     Upon information and belief, there were no guidelines, policies, or procedures in place as to what would be investigated administratively and what would be investigated criminally.

52.     Upon information and belief BakerHostetler issued 49 reports in which some had multiple complaints and/or allegations, involving multiple officers or unknown officers. Recommendations by a BakerHostetler investigator showed 22 allegations were unfounded, including three that were withdrawn, 28 allegations were not sustained, five were exonerated and eight were sustained. The eight sustained allegations involved five officers.

53.     At all relevant times hereto, Mayor Ginther represented to the public that in "egregious" cases, officers could face criminal charges. Said cases were being investigated and reviewed by Wozniak.

54.     At all relevant times hereto, the United States Attorney for the Southern District of Ohio reviewed the conduct of CPD and its officers during the riots and refused to bring any criminal charges including against Plaintiff.

55.     On June 9, 2021, without probable cause, legal right, or justification and/or failure to conduct a reasonable investigation, motivated by politics and/or ill will, Wozniak filed in Franklin County Municipal Court the following criminal complaints against Plaintiff as a result of her conduct as a Columbus Police Officer in her official capacity on May 30, 2020 during the riots:

- Three Counts of Assault in violation of R.C.2903.13(A) for purported use of one burst of mace;
- Three Counts of Dereliction of Duty in violation of R.C. 2921.44(E) as a result of the assault set forth above;
- Three Counts of Interfering with civil rights in violation of R.C. 2921.45 by violating fourth amendment rights.

56. On October 25, 2021, without probable cause, legal right, or justification and/or failure to conduct a reasonable investigation, motivated by politics and/or ill will, Wozniak filed in Franklin County Municipal Court the following criminal complaints against Plaintiff as a result of her conduct as a Columbus Police Officer in her official capacity on May 30, 2020 during the riots:

- One Count of Assault in violation of R.C.2903.13(A) for purported use of one burst of mace;
- One Count of Dereliction of Duty in violation of R.C. 2921.44(E) as a result of the assault set forth above;
- One Count of Interfering with civil rights in violation of R.C. 2921.45 by violating fourth amendment rights.

57. Upon information and belief, prior to filing criminal charges against Plaintiff, Wozniak failed to properly investigate the matter, including but not limited to: (1) interview Columbus Police officers or any peace officer, including Plaintiff's superiors: (2) interview two of the alleged victims set forth in the criminal complaint; and (3) retain and/or consult with a "use of force" expert.

58. As a result of the criminal charges being filed, Plaintiff was issued a bond with conditions, requested to be fingerprinted and required to appear in court numerous times.

59. The filing of criminal charges garnered substantial media attention casting Plaintiff in a disparaging light.

60. As a result of the criminal charges being filed, Plaintiff was relieved of her assignment, surrendered her badge and service weapon, and was reassigned to the Patrol Administrative Office. Plaintiff was suspended as a member of the Honor Guard and EARS Committee. Plaintiff lost some of her training qualifications and/or certifications.

61. As a result of the criminal charges being filed, Plaintiff could no longer work special duty and overtime.

62.    As a result of the criminal charges being filed, Plaintiff's contract as an Adjunct Professor with Columbus State Community College was not renewed. Plaintiff had served as an Adjunct Professor for 10 years.

63.    Upon information and belief, never before has a police officer or any peace officer on the Central Ohio area or the State of Ohio been criminally charged for deploying a chemical agent especially under the facts and circumstances set forth above including deploying the agent for 1-2 seconds, while riots were in progress, whereby citizens would not head officers verbal commands and no one was injured nor required medical attention.

64.    Upon information and belief, the use of force by Plaintiff, specifically deploying a chemical agent under the facts and circumstances set forth above, was reasonable and justified, according to the Columbus Division of Police and experts in the field of law enforcement.

65.    None of the alleged victims set forth in the criminal complaint were ever detained, which is a required element for the criminal charge of Interfering with civil rights in violation of R.C. 2921.45.

66.    Upon information and belief, Wozniak, who at all relevant times hereto, is and was a Deputy Director of the Department of Public Safety and special investigator on behalf of the City of Columbus, allegedly investigated the matter involving Plaintiff, prepared and signed an affidavit as to probable cause to file the criminal charges set forth above, prepared and signed a the criminal complaints also drafted by Wozniak and, filed or caused to be filed the criminal complaints with the Franklin County Municipal Court Clerk. The filing of those documents initiated criminal proceedings against Plaintiff.

67.    Under Ohio law, Wozniak was able to execute affidavits to initiate criminal proceedings, but it would be improper for him to execute sworn statements asserting probable

cause in order to initiate criminal proceedings if he did not have sufficient evidence of probable cause that a criminal act(s) was committed.

68.　At all relevant times hereto, Wozniak had a duty to investigate, and verify any and all claims of alleged criminal conduct.

69.　At all relevant times hereto, Wozniak knew he had to have probable cause to file the criminal charges against Plaintiff.

70.　Wozniak failed to investigate the matter and apply the applicable law before filing the criminal charges against Plaintiff.

71.　Wozniak lacked probable cause to file some or all of the criminal charges against Plaintiff.

72.　Wozniak knew none of the alleged victims set forth in the criminal complaint were ever detained, which is a required element for the criminal charge of Interfering with civil rights in violation of R.C. 2921.45 and yet, without probable cause, still filed a probable cause affidavit and signed the criminal complaint against Plaintiff.

73.　Wozniak knew he lacked probable cause to file all of the criminal charges against Plaintiff.

74.　As a direct and proximate result of Wozniak's conduct, Plaintiff sustained damages, including extreme emotional distress, lost wages, and other losses, all in amounts that will be shown when this cause comes on for trial.

75.　The conduct of Wozniak was willful, malicious, oppressive, and in reckless disregard of the constitutional rights of Plaintiff, thus justifying punitive damages against Wozniak in an amount that will be shown when this matter comes on for trial.

12

76.     Wozniak, who was paid over $156,000.00 as a "special investigator," filed criminal complaints against three (3) Columbus Police Officers, including Plaintiff. The criminal charges that were filed were dismissed against two officers, including Plaintiff, by the Special Prosecuting Attorney and another officer was found "not guilty" by Judge O'Grady.

77.     On July 19, 2022, the criminal charges against Plaintiff were dismissed at the request of the Special Prosecuting Attorney.

78.     At all relevant times hereto, this Civil Action is brought against Wozniak because he initiated the malicious prosecution of Plaintiff, abuse of process against Plaintiff, engaged in a civil conspiracy with City of Columbus and unknown individuals against Plaintiff; and other actions and omissions under color of law which resulted in the deprivation of rights secured to Plaintiff under the Constitutions and laws of the State of Ohio.

79.     At all relevant times hereto, Plaintiff avers that Wozniak acted:

        a.  unlawfully, maliciously, deliberately, recklessly, willfully, intentionally, in bad faith, and/or negligently;

        b.  wantonly; purposefully; knowingly;

        c.  without probable cause, legal right, or justification;

        d.  under color of law, statutes, ordinances, regulations, policies, customs, and/or usage;

        e.  with deliberate indifference;

        f.  with malicious purpose;

        g.  and/or with gross negligence.

80.     This Civil Action seeks compensatory and punitive monetary damages from Wozniak for the commission of acts and/or omission to act under color of law, statutes,

ordinances, regulations, policies, customs, or usage which deprived Plaintiff of her rights, privileges or immunities secured for Plaintiff by the Constitution and laws of the United States of America and the Constitution of Ohio; and further, for singularly and/or acting in concert to deny, and intentionally failing to prevent and/or neglecting to prevent and/or showing reckless disregard and/or deliberate disregard to preventing the denial of Plaintiff's rights to procedural and substantive due process and equal protection of the laws, and her right to be free from malicious prosecution and abuse of process by Wozniak.

81.     Among other reasons, this action is brought to redress injuries to the liberty, person, and property interests of Plaintiff because of Wozniak's acts and/or omissions which include but are not limited to: (a) abuse of process against Plaintiff; (b) malicious prosecution of Plaintiff; (c) fraudulent and malicious deprivation of Plaintiff's rights personal privacy, due process, and equal protection of the laws of the United States of America and the State of Ohio; (d) other acts and omissions of which resulted in injury or losses to Plaintiff; (e) abridgment of Plaintiff's rights secured to her under the Fourth, and Fourteenth Amendments of the United States Constitution and similar provisions of the Ohio Constitution; (f) other acts and omissions which resulted in injury or losses to Plaintiff; and (g) other actions and omissions under color of law which resulted in the deprivation of rights secured to Plaintiff under the Constitutions and laws of the State of Ohio.

## IV. CLAMS FOR RELIEF

### COUNT ONE: VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983

82.     Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

83.     This is an action brought against Wozniak in his individual and official capacities, pursuant to the United States Constitution Amendments IV and XIV, in violation of 42 U.S.C. § 1983 and § 1988.

84.     Wozniak was acting under the color of law when he wrongfully and without legal justification subjected Plaintiff to unreasonable seizure and malicious prosecution, depriving her of liberty and due process of law.

85.     As a direct and proximate result of Wozniak omissions, and unreasonable seizure and malicious prosecution, Wozniak deprived Plaintiff of the rights to be free from unreasonable seizure, the right to be free from malicious prosecution, and the right to due process of law guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

86.     Wozniak's acts violated Plaintiff's constitutional rights.

87.     Wozniak's deprivation of Plaintiff's rights caused Plaintiff damages.

88.     Wozniak's above-described actions were malicious, reckless, deliberate, and callously indifferent to Plaintiff's federally protected rights.

### COUNT TWO: MALICIOUS PROSECUTION UNDER OHIO LAW

89.     Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

90.     As described above, Wozniak acted with malice in instituting and continuing the criminal prosecution of Plaintiff regarding Haley Hensel.

91.     The above-described criminal prosecution terminated in Plaintiff's favor on July 19, 2022, when charges in the criminal action were dismissed.

92.     Wozniak's actions constituted malicious prosecution under Ohio law, and as a direct and proximate result of Wozniak's above-described misconduct, Plaintiff has been injured

and Plaintiff is entitled to all damages resulting from Wozniak's actions, in an amount to be proven at trial.

93. Wozniak's above-described actions were malicious, reckless, deliberate, and callously indifferent to Plaintiff's protected rights.

## COUNT THREE: MALICIOUS PROSECUTION UNDER OHIO LAW

94. Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

95. As described above, Wozniak acted with malice in instituting and continuing the criminal prosecution of Plaintiff regarding Jaci Kincaid.

96. The above-described criminal prosecution terminated in Plaintiff's favor on July 19, 2022, when charges in the criminal action were dismissed.

97. Wozniak's actions constituted malicious prosecution under Ohio law, and as a direct and proximate result of Wozniak's above-described misconduct, Plaintiff has been injured and Plaintiff is entitled to all damages resulting from Wozniak's actions, in an amount to be proven at trial.

98. Wozniak's above-described actions were malicious, reckless, deliberate, and callously indifferent to Plaintiff's protected rights.

## COUNT FOUR: MALICIOUS PROSECUTION UNDER OHIO LAW

99. Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

100. As described above, Wozniak acted with malice in instituting and continuing the criminal prosecution of Plaintiff regarding Samantha Summer.

101. The above-described criminal prosecution terminated in Plaintiff's favor on July 19, 2022, when charges in the criminal action were dismissed.

102.    Wozniak's actions constituted malicious prosecution under Ohio law, and as a direct and proximate result of Wozniak's above-described misconduct, Plaintiff has been injured and Plaintiff is entitled to all damages resulting from Wozniak's actions, in an amount to be proven at trial.

103.    Wozniak's above-described actions were malicious, reckless, deliberate, and callously indifferent to Plaintiff's protected rights.

### COUNT FIVE: MALICIOUS PROSECUTION UNDER OHIO LAW

104.    Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

105.    As described above, Wozniak acted with malice in instituting and continuing the criminal prosecution of Plaintiff regarding Alisha Watters.

106.    The above-described criminal prosecution terminated in Plaintiff's favor on July 19, 2022, when charges in the criminal action were dismissed.

107.    Wozniak's actions constituted malicious prosecution under Ohio law, and as a direct and proximate result of Wozniak's above-described misconduct, Plaintiff has been injured and Plaintiff is entitled to all damages resulting from Wozniak's actions, in an amount to be proven at trial.

108.    Wozniak's above-described actions were malicious, reckless, deliberate, and callously indifferent to Plaintiff's protected rights.

### COUNT SIX: ABUSE OF PROCESS

109.    Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

110.    As described above, on June 9, 2021, Wozniak falsely and maliciously accused Plaintiff of criminal violations regarding Haley Hensel.

111. As described above, on June 9, 2021, Wozniak prepared and signed an affidavit that alleged that Plaintiff had committed numerous criminal violations; and prepared and signed a Criminal Complaint. The filing of those documents initiated criminal proceedings against Plaintiff.

112. Wozniak used the legal process for an ulterior purpose.

113. As described above, Wozniak willfully and/or intentionally filed said action to harass, annoy Plaintiff and/or with ulterior motives.

114. On July 19, 2022, the State of Ohio dismissed its charges against Plaintiff at the request of the special prosecutor due to lack of probable cause and other legal reasons.

115. The filing of said actions and use of the judicial system by Wozniak is not proper.

116. As a direct and proximate result of Wozniak's wrongful use of process for an ulterior purpose, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT SEVEN: ABUSE OF PROCESS

117. Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

118. As described above, on June 9, 2021, Wozniak falsely and maliciously accused Plaintiff of criminal violations regarding Jaci Kincaid.

119. As described above, on June 9, 2021, Wozniak prepared and signed an affidavit that alleged that Plaintiff had committed numerous criminal violations; and prepared and signed a Criminal Complaint. The filing of those documents initiated criminal proceedings against Plaintiff.

120. Wozniak used the legal process for an ulterior purpose.

121. As described above, Wozniak willfully and/or intentionally filed said action to harass, annoy Plaintiff and/or with ulterior motives.

122.    On July 19, 2022, the State of Ohio dismissed its charges against Plaintiff at the request of the special prosecutor due to lack of probable cause and other legal reasons.

123.    The filing of said actions and use of the judicial system by Wozniak is not proper.

124.    As a direct and proximate result of Wozniak's wrongful use of process for an ulterior purpose, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT EIGHT: ABUSE OF PROCESS

125.    Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

126.    As described above, on June 9, 2021, Wozniak falsely and maliciously accused Plaintiff of criminal violations regarding Samantha Sumner.

127.    As described above, on June 9, 2021, Wozniak prepared and signed an affidavit that alleged that Plaintiff had committed numerous criminal violations; and prepared and signed a Criminal Complaint. The filing of those documents initiated criminal proceedings against Plaintiff.

128.    Wozniak used the legal process for an ulterior purpose.

129.    As described above, Wozniak willfully and/or intentionally filed said action to harass, annoy Plaintiff and/or with ulterior motives.

130.    On July 19, 2022, the State of Ohio dismissed its charges against Plaintiff at the request of the special prosecutor due to lack of probable cause and other legal reasons.

131.    The filing of said actions and use of the judicial system by Wozniak is not proper.

132.    As a direct and proximate result of Wozniak's wrongful use of process for an ulterior purpose, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT NINE: ABUSE OF PROCESS

133.    Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

134.    As described above, on October 25, 2021, Wozniak falsely and maliciously accused Plaintiff of criminal violations regarding Alisha Watters.

135.    As described above, on October 25, 2021, Wozniak prepared and signed an affidavit that alleged that Plaintiff had committed numerous criminal violations; and prepared and signed a Criminal Complaint. The filing of those documents initiated criminal proceedings against Plaintiff.

136.    Wozniak used the legal process for an ulterior purpose.

137.    As described above, Wozniak willfully and/or intentionally filed said action to harass, annoy, and/or with ulterior motives.

138.    On July 19, 2022, the State of Ohio dismissed its charges against Plaintiff at the request of the special prosecutor due to lack of probable cause and other legal reasons.

139.    The filing of said actions and use of the judicial system by Wozniak is not proper.

140.    As a direct and proximate result of Wozniak's wrongful use of process for an ulterior purpose, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT TEN: CIVIL CONSPIRACY UNDER STATE LAW**

141.    Plaintiff incorporates by reference the prior allegations as if fully set forth herein.

142.    Upon information and belief, City of Columbus and some of its elected officials were under public pressure to "punish" police officers for their conduct during the riots.

143.    On June 1, 2020, Mayor Andrew J. Ginther established an email hotline outside of CPD's chain of command for the public to send complaints, video, and photographs related to officer actions during the protests and riots.

144.    The City of Columbus represented to the public that an independent committee established by the city reviewed complaints received and separated the complaints to be

investigated either criminally or administratively. Further, to ensure each complaint received an independent review, the city hired Wozniak to investigate any complaints deemed potentially criminal by the committee.

145.    Upon information and belief, no independent committee was formed, there were no procedures or protocols in place to ensure each complaint received an independent review, there were no procedures or protocols in place how it would be determined that a complaint should be referred for a criminal investigation, and there were no procedures or protocols in place how a complaint would be reviewed by BakerHostetler to investigate administratively versus a complaint that would be reviewed by Wozniak for a criminal investigation.

146.    Upon information and belief, and according to a "probable cause" affidavit filed by Wozniak, Jaci Kincaid submitted information to the hotline established by Mayor Ginther that during the riots Plaintiff "walked right toward" a group and "pepper sprayed us". There were no allegations Kincaid or anyone in her group were injured as a result of the pepper spray, were seized, or were arrested.

147.    Plaintiff does not have knowledge as to what the City of Columbus did with this information, however it was not referred to BakerHostetler to investigate administratively and upon information and belief, it was referred to Wozniak for criminal investigation sometime in the Fall of 2020.

148.    By the beginning of 2021, no criminal charges were filed against any Columbus Police Officer arising out of the riots. City of Columbus and some of its elected officials were succumbing to political pressure to hold Columbus Police officers accountable for their actions during the riots. As of December of 2020, City of Columbus had paid more than $50,000.00 to Wozniak and $550,000.00 to BakerHostetler.

149.    Upon information and belief, in December of 2020, BakerHostetler, said there were four cases of exonerated conduct, nine unfounded complaints, two withdrawn complaints and 25 instances in which there was not enough evidence to prove or disprove the allegations. There were three instances of sustained allegations — two of which were for failing to properly report using force — and three investigations were ongoing.

150.    On or about January 28, 2021, Columbus Police Chief Thomas Quinlan was demoted back to deputy chief by Mayor Ginther who said in a written statement that Quinlan had lost the public's trust after failing to "successfully implement the reform and change I expect and that the community demands. Columbus residents have lost faith in him and in the division's ability to change on its own."

151.    Upon information and belief, Wozniak, City of Columbus and some of its elected officials were succumbing to political pressure to hold Columbus Police officers accounted for their actions during the riots and justify the 600,000.00 plus dollars spent when no criminal complaints had been filed against any officer(s) and there were only three findings of administrative violations.

152.    As set forth above, Wozniak failed to investigate the matter. This included but what not limited to interviewing Plaintiff's superiors, officers that were with Plaintiff at or near the area which established Plaintiff's reasonable use of force, and rebut what Kincaid and others were alleging.

153.    Upon information and belief, Wozniak failed to interview two of the alleged victims Hensel and Sumner before he filed the criminal complaints.

154.    Wozniak did not have probable cause to file the above referenced criminal complaints against Plaintiff for lawfully deploying a one to two second burst of Division issued chemical spray.

155.    Defendants conspired to file criminal charges against Plaintiff knowing there was no probable cause to warrant some or all of the charges.

156.    Defendants used the criminal justice system to harass and annoy Plaintiff, and/or with ulterior motives.

157.    On July 19, 2022, the State of Ohio dismissed its charges against Plaintiff at the request of the special prosecutor due to lack of probable cause and other legal reasons.

158.    The filing of said actions and use of the judicial system by Defendants was not proper.

159.    As a direct and proximate result of Defendants' conspiracy Plaintiff has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that this Court award compensatory damages, in an amount to be determined at trial against Defendants, punitive damages as to Defendant Wozniak, prejudgment and post-judgment interest, costs, attorneys' fees, and such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ *David A. Goldstein*
**DAVID A. GOLDSTEIN (0064461)**
DAVID A. GOLDSTEIN CO., L.P.A.
511 S. High Street
Suite 200
Columbus, Ohio 43215
(614) 222-1889
(614) 222-1899(Fax)
dgoldstein@dgoldsteinlaw.com

Lead Trial Attorney

s/ *Kaitlyn C. Stephens*
**KAITLYN C. STEPHENS (0095589)**
COLLINS & STEPHENS CO., LPA
150 E. Mound St., Suite 308
Columbus, Ohio  43215
(614) 443-3100
(614) 413-3902(Fax)
kaitlyn@mcollinslaw.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial on all issues triable to a jury.

/s/ *David A. Goldstein*
**DAVID A. GOLDSTEIN (0064461)**