**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|                          |   |                              |
|--------------------------|---|------------------------------|
| Traci Shaw,              | : |                              |
|                          | : | **Case No. 2:23-cv-00942**   |
| Plaintiff,               | : |                              |
| v.                       | : | **Judge Graham**             |
|                          | : |                              |
| Richard Wozniak, et al., | : | **Magistrate Judge Deavers** |
|                          | : |                              |
| Defendants.              | : |                              |

**<u>OPINION & ORDER</u>**

This case has its origins in the summer of 2020, when Columbus, Ohio experienced sustained civil unrest amidst the George Floyd protests. The events of that summer, particularly late May into early June, were marked by rioting, looting, property damage, and violent clashes between citizens and police. The City of Columbus endeavored to hold police officers accountable for any excessive uses of force. To that end, certain citizen complaints of police officer conduct were referred to Defendant Richard Wozniak ("Wozniak") to evaluate whether the conduct warranted criminal charges. Wozniak's evaluation led him to file criminal charges against Plaintiff Traci Shaw ("Shaw"), an officer with the Columbus Police Department, based on video footage which appeared to show Shaw using pepper spray on a group of citizens without apparent warning or provocation. Eventually, those charges were voluntarily dismissed. Shaw then initiated this suit, alleging that Wozniak and the City of Columbus subjected Shaw to malicious prosecution in violation of her constitutional rights under the Fourth and Fourteenth Amendments, and further raising claims for malicious prosecution, abuse of process, and civil conspiracy under state law.

This matter is now before the Court upon the Defendants' motion for summary judgment. Defs.' Mot., Doc. 61. Defendants Wozniak and the City of Columbus (collectively, "Defendants") seek judgment in their favor on all claims raised by Shaw. For the reasons that follow, Defendants'

motion is **GRANTED** as to Counts 1 and 10 of Shaw's complaint, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims and **ORDERS** that the remaining claims be dismissed without prejudice

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379

[2]

(6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## BACKGROUND

Following the murder of George Floyd on May 25, 2020, citizens of Columbus took to the streets in protest. The following days were marked by clashes between protesters and police, the circumstances and details of which are more exhaustively chronicled in *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216 (S.D. Ohio 2021), *modified sub nom. Alsaada v. City of Columbus, Ohio*, No. 2:20-CV-3431, 2021 WL 3375834 (S.D. Ohio June 25, 2021).

Pertinent to the instant case, on May 30, 2020, Officer Traci Shaw encountered a group of protesters near the intersection of High Street and Goodale Street and deployed her mace[1] against the group. One of the members of the group, Jaci Kincaid ("Kincaid"), recorded a brief video of the encounter on her cellphone ("Kincaid video"). The 28-second Kincaid video appeared to show an officer (later known to be Shaw) deploying her mace without any apparent provocation from

---

[1] Also described in the materials before the Court as "pepper spray," "chemical agent," "chemical irritant" or "chemical deterrent."

the group or warning from the police. Other members of the group included Haley Hensel ("Hensel"), Samantha Sumner ("Sumner"), and Alisha Watters ("Watters").

 In response to complaints received concerning police conduct during the protests, the City of Columbus established the Public Safety Use of Force Committee (the "Committee"). The Committee was tasked with reviewing the complaints and determining whether they should be referred to Internal Affairs or referred to Defendant Richard Wozniak for investigation as a potential criminal matter. The Committee ultimately received over 800 complaints via an email address set up to receive them. Of those complaints, 20 were referred to Wozniak. Eventually, the 20 referrals resulted in misdemeanor criminal charges against three officers (three separate cases), including Shaw.

Wozniak filed the initial charges on June 9, 2021. For each of three alleged victims (Kincaid, Hensel, and Sumner), Shaw was charged with three misdemeanors (assault (R.C. 2903.13(A)), dereliction of duty (R.C. 2921.44(E)), and interference with civil rights (R.C. 2921.45)) for a total of nine counts. On October 25, 2021, Wozniak filed another set of those three charges against Shaw, this time as to the fourth alleged victim, Watters, bringing the total number of charges filed against Shaw to 12.

While the charges were pending, Shaw was placed on administrative leave with her same rate of pay, though she was unable to earn additional pay available for special duty assignments and overtime. Shaw was also subject to a stay-away order as a bond condition. On July 19, 2022, all charges against Shaw were voluntarily dismissed by the city.

## DISCUSSION

Shaw raises 10 claims in her Complaint. Doc. 1. Under Count 1, Shaw brings a § 1983 malicious prosecution claim against Wozniak. Section 1983 "is not a source of substantive rights,

but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979). Shaw alleges that her rights under the Fourth Amendment and the Fourteenth Amendment were violated by malicious prosecution instigated by Wozniak, acting under color of law. Under Counts 2-5, Shaw brings claims for malicious prosecution under Ohio law. Under Counts 6-9, Shaw brings claims for abuse of process under Ohio law.[2] Finally, in Count 10, Shaw alleged civil conspiracy under state law against both Wozniak and the City of Columbus, but she has since abandoned that claim, thus leaving no active claims against the City. *See* doc. 73, # 3494 n.2. Though Shaw states that she is no longer pursuing Count 10 specifically "against the City of Columbus," (*id.*) this effectively drops the claim against Wozniak as well, as he cannot conspire with himself.

For reasons more fully explained below, Shaw cannot prevail on her § 1983 claim of malicious prosecution because she cannot demonstrate that she suffered a deprivation of liberty necessary to sustain such a claim. Furthermore, her claims in state law warrant dismissal at this stage.

## I.      Shaw's § 1983 Claim Alleging Malicious Prosecution (Count I).

To prevail on a § 1983 claim for malicious prosecution, a plaintiff must show (1) that the defendant participated in the decision to prosecute; (2) the prosecution lacked probable cause; (3) plaintiff suffered a deprivation of liberty (apart from the initial arrest) as a result of the proceedings; *and* (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). The parties do not dispute that Wozniak's involvement was sufficient to establish the first element. But Defendants contend that Shaw cannot establish the remaining

---

[2] As to both the malicious prosecution and abuse of process claims, Shaw has raised four (4) counts each, reflecting the four (4) alleged victims (Kincaid, Hensel, Sumner, and Watters) of the crimes charged against Shaw. Nevertheless, the material facts are the same such that all the state-law malicious prosecution claims rise and fall together, as do all the abuse of process claims.

elements. The Court agrees that Shaw cannot establish that she was deprived of a sufficient liberty interest to satisfy the third element. Because Shaw must satisfy all four elements to sustain her claim, Defendants are entitled to judgment as a matter of law on Count I of Shaw's Complaint. However, the Court first addresses the issue of probable cause, as it is implicated in all of Shaw's active claims.

### A. Probable Cause.

To determine whether Wozniak had probable cause to initiate the criminal proceedings against Shaw, the Court considers the totality of the circumstances, and whether the facts then known to Wozniak were sufficient to induce a prudent person to believe that Shaw had committed an offense. *Sykes*, 625 F.3d at 306 (quoting *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002)).

A probable cause determination, with its constitutional dimension, is typically the province of the court rather than the jury. *Gerics v. Trevino*, 974 F.3d 798, 804 (6th Cir. 2020) (quoting Randall H. Warner, *All Mixed Up About Mixed Questions*, 7 J. App. Prac. & Process 101, 109 (2005)) ("[I]f juries decided probable cause and reasonable suspicion, then the extent of one's constitutional rights could vary according to the whims of any given group of twelve citizens."). Nevertheless, a genuine dispute of fact which is material to such a determination will preclude summary judgment on that issue. As the Sixth Circuit has stated, "the ultimate question of probable cause (**separate from the determination of historical facts**) in a civil case **when the historical facts are undisputed** is a question of law for the court and not a jury." *Gerics*, 974 F.3d at 805 (bold formatting supplied). In this retrospective posture, the court considers whether the defendant based his charging decision on "reasonably reliable information that the [plaintiff] ha[d] committed a crime." *Harris v. City of Saginaw, Michigan*, 62 F.4th 1028, 1033 (6th Cir. 2023) (quoting *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008)). This consideration is thus

[6]

necessarily limited to the information possessed by the defendant at the time the charges were filed. *Id.*

Here, Defendants argue that there are no material factual disputes standing in the way of summary judgment in their favor. To this end, Defendants emphasize the fact that probable cause "is not a high bar," (*Kaley v. United States*, 571 U.S. 320, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014)) and thus is easily cleared when considering the information known to Wozniak at the time the charging decision was made. But Shaw is correct to observe that the lengthy investigation is a distinguishing and complicating feature of this case. The charges were filed over a year after the underlying incident and initial complaint from Kincaid, and Defendants have set forth the investigative steps Wozniak took in the interim. The suggestion is tempting: with a year-long investigation and the probable cause standard's low bar, how could Wozniak *not* have probable cause?

But, in the Court's view, the length of the investigation cuts both ways. Wozniak had abundant time to uncover "reasonably reliable information" that Shaw had committed a crime. But the length of the investigation also provided occasion for Wozniak to encounter exculpatory evidence—especially when the suspect is a law enforcement officer for whom the privilege to use force may be readily established as a complete defense to the contemplated charges.

Wozniak "cannot simply turn a blind eye toward potentially exculpatory evidence." *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). Shaw contends that Wozniak did exactly that when faced with conflicting witness statements and video footage purporting to show ongoing riots contemporaneous with the underlying incident. This evidence, Shaw argues, should have vitiated Wozniak's probable cause determination by establishing that Shaw's use of force was privileged. Citing *Harvey v. Carr*, 616 F. App'x 828-29 (6th Cir. 2015), Wozniak argues that probable cause

would be vitiated only if he "conclusively knew" that Shaw's conduct was protected by a colorable affirmative defense. Doc. 61, # 2751.

In *Harvey*, the plaintiff was arrested for fourth-degree assault after slapping his son in the face at a public pool. 616 F. App'x at 827. After he was acquitted by a jury, the plaintiff filed suit against the defendant officer for false arrest, arguing that the arrest was without probable cause because "a reasonable officer would have known conclusively that Kentucky's parental-discipline justification statute applied, rendering the slap legal and negating probable cause." *Id.* at 828. The Sixth Circuit affirmed a grant of summary judgment for the officer, because "only if a reasonable officer would *conclusively* know that an investigative target's behavior is protected by a legally cognizable affirmative defense does the officer lack a legal foundation for arrest." *Id.* at 829 (citing *Painter v. Robertson*, 185 F.3d 557, 571 n.21 (6th Cir.1999)) (quotations omitted). Furthermore, an officer need not "conduct quasi-trials" nor "inquire into facts and circumstances in an effort to discover if the suspect had an affirmative defense." *Id.* at 828-29 (quoting *Painter*, 185 F.3d at 571 n.21 and *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir.2002)).

The instant facts are distinguishable. Unlike the arresting officer in *Harvey*, who made the probable cause determination and effected the arrest shortly after the alleged conduct, Wozniak had over a year to investigate the claimed affirmative defense and process the evidence which Shaw contends is exculpatory. *Contrast Ahlers*, 188 F.3d at 373 (regarding defendants' probable cause determination, "in light of the very short period of time they were responsible for the investigation (*i.e.*, 2 days) it is understandable that they did not fully realize or appreciate the potentially exculpatory nature of some of the evidence."). Compared to much of the case law, the length of Wozniak's investigation created an oceanic body of factual evidence, including the evidence Wozniak considered for the probable cause determination, but also evidence of

[8]

Wozniak's own investigative processes and consideration of the evidence in front of him. Such evidence is relevant to whether Wozniak "turn[ed] a blind eye toward potentially exculpatory evidence," and whether "a rational officer considering the evidence in its totality would have concluded that he or she lacked probable cause." *Id.* at 372. Though the ultimate probable cause determination is properly reserved for the Court, the breadth of disputed facts potentially material to such a determination creates predicate jury questions sufficient for Shaw to stave off summary judgment on this basis.[3] *See Gerics*, 974 F.3d at 805.

### B. Deprivation of Liberty.

The next element of a § 1983 claim for malicious prosecution requires Shaw to show that she suffered a deprivation of liberty as a consequence of the legal proceeding against her. Based on the undisputed facts before the Court, and in light of the Sixth Circuit precedent in *Noonan v. Cnty. of Oakland*, 683 F. App'x 455 (6th Cir. 2017), Shaw cannot establish a deprivation of liberty sufficient to sustain her § 1983 claim for malicious prosecution.

The Sixth Circuit has held that a § 1983 malicious prosecution claim must demonstrate a "deprivation of liberty under the Fourth Amendment, apart from the initial seizure." *Sykes*, 625 F.3d at 308-09. In *Noonan*, the Sixth Circuit discussed the contours of the deprivation element of a claim for malicious prosecution. The plaintiff in *Noonan* was the victim of car theft. *Noonan*, 683 Fed.Appx. at 456. The investigating detective, however, doubted his story, eventually leading to criminal charges against the plaintiff for insurance fraud and false reporting of a felony. *Id.* at

---

[3] For example, Shaw contends that video footage shows riotous crowds contemporaneous with and proximate to Shaw's use of the pepper spray, thus making her use of force justifiable and therefore privileged. Wozniak argues that the video footage is unclear, and thus he could not identify Shaw in the video or otherwise "conclusively" know that the circumstances warranted her use of force. This is a jury question, one which is a degree removed from the Court's ultimate probable cause determination but nevertheless material and thus preclusive to a grant of summary judgment on this basis.

459. After the charges were dismissed, the plaintiff initiated the suit for malicious prosecution. *Id.* at 460.

Regarding the deprivation element, the Sixth Circuit summarized the plaintiff's argument as follows:

> He asserts that the police called him in for questioning (twice) and he had to undergo a polygraph exam; he had to hire a criminal defense attorney; the court required him to attend a status conference; the police/prosecutor withheld his car from him, in impound, for over five months; and the false charges caused substantial embarrassment, personally and professionally, as he had to reveal this prosecution to his employer; all of which inhibited his practice as a lawyer and cost him thousands of dollars.

*Id.* at 462. The Sixth Circuit emphasized that the cause of action requires a showing of deprivation "*apart from the initial seizure*." *Id.* at 463 (quoting *Sykes*, 625 F.3d at 309) Therefore, "Given that a summons to appear is even less a deprivation than an arrest, it stands to reason that it too is insufficient to satisfy this third element of a Fourth Amendment malicious-prosecution claim under § 1983." *Id.* Further, the withholding of his car and the cost of defending against the charges were likewise held to be insufficient to satisfy the deprivation of liberty element.

In the instant case, the Court finds the following facts relevant to the deprivation element are undisputed:

(1) Shaw was served on a summons (i.e., not stopped, arrested, incarcerated, or otherwise detained) (doc. 59-1, # 2386);
(2) Shaw had to appear in court over 2 days (doc. 56-1, # 2014);
(3) Shaw did not have to post bail (doc. 59-1, # 2386);
(4) Shaw was not subject to any travel restrictions (*id.*);
(5) Shaw's only condition of bond was no contact with the victims (doc. 56-1, # 2011);
(6) Shaw was placed on administrative leave with pay (*id.* at # 1919);
(7) Shaw was unable to work overtime or special duty while on administrative leave (*id.*);

    (8)  Her employer took her service weapon and badge while she was on administrative leave (*id.*);[4]

    (9)  Shaw had to be fingerprinted as part of the process (doc. 1, ¶ 58);

    (10)  Shaw's teaching contract at Columbus State Community College was not renewed (*id.* at ¶ 62).

Based on the above, Shaw can muster no greater showing of deprivation than that of the plaintiff in *Noonan*. Like the *Noonan* plaintiff, Shaw "was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions." *Id.* As such, the Sixth Circuit's conclusion applies with like force to these facts: "In short, despite the aggravation, financial cost, and personal humiliation that [Shaw] suffered," the Court "must conclude as a matter of law that [s]he did not suffer a deprivation of liberty as understood in our Fourth Amendment jurisprudence." *Noonan*, 683 Fed.Appx. at 461.

Because Shaw cannot show a sufficient deprivation of liberty, she cannot, as a matter of law, prevail on her § 1983 claim for malicious prosecution. Therefore, Wozniak is entitled to summary judgment on Count 1 of the complaint. The Court need not resolve the question of qualified immunity. *See Ahlers*, 188 F.3d at 374 ("no need for a qualified immunity defense" with no viable claim under § 1983).

## II.    Shaw's Claims Under State Law (Counts 2-9).

Having disposed of the lone claim over which this Court had original jurisdiction, and pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction of Shaw's remaining claims. However, given the apparent factual overlap among the claims, the Court will briefly explain why the conclusions above do not dictate the disposition of Counts 2-9 of Shaw's Complaint.

---

[4] Shaw refers to her "inability to carry a firearm" as "evidence of the deprivation." Doc. 74, # 3519. To be clear, the withholding of her service weapon appears to be a decision by her employer, and she does not allege that second amendment restrictions were placed on her as a condition of bond.

In Counts 2-5, Shaw alleges Malicious Prosecution under Ohio law. Ohio courts require that a plaintiff raising a claim for malicious prosecution under state law prove three (3) elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Lacey v. Ohio Auditor of State*, 2019-Ohio-4266, ¶ 14. As compared to a § 1983 claim for malicious prosecution, the Ohio iteration does not require that the claimant show a deprivation of liberty; therefore, the Court's disposition of the § 1983 claim on the deprivation element does not dictate the same disposition for the state law claims. *Cf.*, *Trussell v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 145-46, 559 N.E.2d 732, 736 (1990) (regarding tort of malicious prosecution in Ohio, "damage to dignity and reputation… occurs whether the plaintiff is arrested or… haled into court on summons.").

In Counts 6-9, Shaw alleges Abuse of Process under state law. Under Ohio law, the elements of an abuse of process claim are:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause;
> (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and
> (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 1994-Ohio-503, 68 Ohio St. 3d 294, 298, 626 N.E.2d 115, 118. Because an abuse of process claim requires probable cause, whereas a malicious prosecution claim depends on the lack of probable cause, they are alternative tort theories of which only one will proceed. *Id.* The Court has already concluded that the issue of probable cause presents a genuine dispute of material fact. *See supra* § I.A.

Against these claims, Wozniak asserts Ohio's doctrine of absolute privilege. Under Ohio law, "an individual cannot be held civilly liable for information, whether true or false," provided as part of a judicial proceeding, "so long as that information bears some reasonable relation to the

alleged activity reported." *Fair v. Litel Commc'n, Inc.*, No. 97APE06-804, 1998 WL 107350, at *6 (Ohio Ct. App. Mar. 12, 1998). He argues that this absolute privilege attaches "even if the statements are false, and are made in bad faith with knowledge of their falsity and with actual malice." *Barnes v. Beachwood*, 2006-Ohio-3948, ¶ 17. Wozniak essentially contends that Shaw's state law claims for malicious prosecution and abuse of process are factually dependent on Wozniak's statements made during the course of the proceeding (especially in his charging affidavit, the necessary center of gravity) and therefore the privilege is fatal to such claims.

A district court may decline to exercise supplemental jurisdiction over state law claims after having disposed of all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g,* No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998). Given the conclusion as to Shaw's lone federal claim, *supra*, the fact that that conclusion does not dictate the outcome of the state law claims, and the centrality of Wozniak's assertion of immunity under Ohio law, the Court finds it prudent to dismiss the state law claims without prejudice, such that they may be considered in state court. Therefore, the Court declines to exercise supplemental jurisdiction over Counts 2-9 of Shaw's Complaint.

## CONCLUSION

As to Count 1 of Plaintiff Shaw's Complaint, alleging malicious prosecution under 42 U.S.C. § 1983, Defendant Wozniak's motion for summary judgment is **GRANTED**, because Shaw cannot show a deprivation of constitutional liberty sufficient to sustain such claim. As to Counts 2-9 of Plaintiff Shaw's Complaint, alleging malicious prosecution and abuse of process under state law, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and

[13]

therefore **ORDERS**, *sua sponte*, that such claims be **DISMISSED without prejudice**. Finally, judgment is **GRANTED** in favor of both Defendants as to Count 10, alleging civil conspiracy, as Plaintiff Shaw dropped her pursuit of that claim.

       **IT IS SO ORDERED**.

                              s/ James L. Graham
                              JAMES L. GRAHAM
                              United States District Judge

DATE: May 2, 2025

[14]